## No. 9930.

### THE PULASKI IRRIGATING DITCH COMPANY, ET AL. *v.* THE CITY OF TRINIDAD, ET AL.

Decided January 9, 1922.

Action to restrain a municipal corporation from selling sewage water to its co-defendant for irrigation purposes. Judgment for defendants.

### *Reversed.*

1.  WATER RIGHTS—*Municipal Corporations.* Water of the public streams of Colorado belongs to the people and appropriators acquire only a right to its use; when the use is completed, the right of the user terminates, and this rule apples to municipalities using water from public streams.

2.      *Municipal Corporations—Sewage.* Where a municipality by means of purification plants separates the noxious solids from sewage, the resulting purified water is not newly developed water belonging to the city, but having served its purpose, should be returned to the natural stream.

3.  MUNICIPAL CORPORATIONS—*Right to Sell Sewage Water.* Water di-
    verted from a natural stream and used for sewer purposes by
    a city, and which, having served its purpose, is separated from
    the solid matter by means of purification plants, does not be-
    long to the city, and it has no right to sell it.

*Error to the District Court of Las Animas County, Hon.*
*A. C. McChesney, Judge.*

Mr. A. W. McHENDRIE, Mr. B. H. SHATTUCK, Messrs.
NORTHCUTT, FREEMAN & NORTHCUTT, for plaintiffs in
error.

Mr. HENRY HUNTER, Messrs. ALLEN & WEBSTER, for de-
fendants in error.

*En banc.*

MR. JUSTICE TELLER delivered the opinion of the court.

THE plaintiffs in error were plaintiffs in a suit to re-
strain the defendant in error, the City of Trinidad, from
selling to its codefendant, The Model Land and Irrigation
Company, certain waters which said city claimed the right
to sell from its plants in which the city sewage was purified.
The defendants had judgment, and the cause is now be-
fore us on error.

From the record it appears that in 1903, the city pur-
chased certain early priorities of water from the Las Ani-
mas River, and shortly thereafter constructed several
reservoirs for the storing of flood waters, all for the use
of the inhabitants of the city. It appears further that the
city had been supplied with water prior to the date men-
tioned by The Trinidad Water Works Company, whose
system was later bought by the city.

In 1892, a sewer system was completed by the City of
Trinidad, and the sewage carried therein was emptied di-
rectly into the Las Animas River. Very soon thereafter,
this disposal of the sewage was enjoined by the district
court. Thereupon the city extended its sewers and dis-
charged the sewage into settling pits on land adjoining the
river. From the record it appears that a considerable

part of the water content of the sewage seeped or ran back into the river, and soon became a part of the supply for the appropriations below the point of discharge.

In 1917, the city began the construction of two purification plants, and upon their completion proposed to sell the purified water to said Model Land and Irrigation Company; hence this suit. There seems to be no substantial controversy over the facts, and the sole question presented for our consideration is as to the right of the city to sell the water.

Plaintiffs in error contend that, inasmuch as the water which escaped from the pits and ran into the river, contributed to supply appropriations down the river, the city cannot now divert that water for use below the points where it has been in use for some years past. They contend also that the water having performed the purpose for which it was diverted, must, under the law, be returned to the river from which it was taken.

Defendants in error contend that "the application of water to domestic use is a use which consumes." They also contend, in effect, if not in words, that sewage is a thing which may be considered regardless of its constituents; and that the water resulting from its purification is salvaged or developed water; that is, water produced from something which was not water.

The first proposition is true only as to a part of the water applied to city uses. It is not true of water used in the sewers for the purpose of diluting and conveying away solid matter. This water in the sewers exists as fully as before it was used, but in connection with solid matter, which makes it unfit for further use, as it is. It has been used as a means of conveying matter, a merely mechanical use. That it may be used for irrigation before purification is not denied, but such use is highly objectionable for reasons well known. When it is purified, it is again the same element which was originally diverted. The separation will take place, to a large degree, if the sewage be allowed to stand, and that, too, without any external aid.

That fact is conclusive that the sewage is not fundamentally different from water. A title by use is not acquired any more than it is in the case of water used for power purposes; in either case when the use has been completed the right of the user terminates.

The defendants in error have cited a number of cases in which, for various reasons, waters have been held to be salvaged or developed waters. It is not necessary to analyze those cases, from the fact that they were determined by the courts of California, in which the law is quite different, on the question of waters, from the law of this state. As above indicated, the water here in question is not, under the decisions of this court, developed waters.

The application to the facts of this case of a few well-established rules of law in this jurisdiction will determine the question presented for consideration.

It is elementary that the waters of the public streams of this state belong to the people, and that appropriators acquire only a right of use. It is also settled law that an appropriator is limited in his use of water to his actual needs. He must not waste it, and if there is a surplus remaining after use, it must be returned to the stream whence it came.

When a city appropriates water for the use of its citizens, it is subject to the limitation and requirements above stated. When it provides water for the various purposes for which water is used in communities having sewer systems, it assumes full responsibility for the care of the sewage produced. If the situation is such that the sewage cannot be turned into a running stream, and be carried away without causing conditions which are unsanitary and obnoxious to the public, the city must find some other way of disposing of the sewage. The use of water in cities by which it is contaminated is principally as a vehicle for carrying away noxious matter; and when that duty has been discharged and the city, under its obligation to prevent the sewage becoming obnoxious, has withdrawn the solid matter from the water, the water should be returned to the

stream. It has performed the service required of it as truly as has water which has passed over a millwheel.

This case does not call for a determination as to the city's obligation to purify the water, as against some other method of disposing of the sewage; because the city has adopted the first method mentioned. We take the case as we find it.

Defendants in error denominate the water obtained from sewage "outlaw water." This is a new term, and if it connotes water which has ceased to belong to the public, and become susceptible of private ownership, it is for the proponent of the new theory to show how this result follows from the facts. All that can be said of sewage is that it is composed of water and certain added substances; and that it is sometimes very much less deleterious and unsanitary than at other times, according to the proportion of solids to the liquid. Whatever water there is in it is not outlawed because of its use, and it remains a part of the water belonging to the public.

It is said, however, that the city might have disposed of the sewage by evaporating the water from it; from which it is argued that it had a right to destroy the water; hence it could not belong to the public.

It would seem that, according to the established public policy of this state, this right to destroy the water by evaporation can exist only when there is no other practicable method of disposing of the sewage. That is to say, if all other methods were very expensive as compared with the cost of evaporation, public policy might, in the interest of the community producing sewage, permit its disposal by the evaporation of the water. That case, however, is not before us. We are dealing with water which the city is voluntarily purifying.

To turn this water back into the river will not increase the river's flow above what it would have been had the water not been diverted, and it is not therefore developed water. Applying the principle heretofore laid down, it

seems clear that the water here in question does not belong to the city, and that it has no right to sell it.

It is, therefore, unnecessary to consider what rights were obtained by the use of water escaping from the settling pits.

The judgment is reversed.

MR. JUSTICE DENISON and MR. JUSTICE BURKE dissent.

MR. CHIEF JUSTICE SCOTT not participating.