WATER SUPPLY AND STORAGE COMPANY, Applicant-Appellant,

v.

Harvey W. CURTIS and Mark H. Curtis, Protestants-Appellees.

No. 85SA84.

Supreme Court of Colorado,
En Banc.

March 9, 1987.

Ward H. Fischer, William R. Fischer, Fort Collins, for applicant-appellant.

Harvey W. Curtis, Denver, for protestants-appellees.

W. Paul Eckman, Asst. City Atty., Fort Collins, for amicus curiae City of Fort Collins.

LOHR, Justice.

Water Supply and Storage Company (applicant) appeals from that portion of the judgment and decree issued by the water judge for Water Division 1 denying authorization to reuse or make successive uses of water in connection with the determination of a conditional water right for storage in Trap Lake II Reservoir in the Cache La Poudre River drainage in Larimer County. We affirm in part, reverse in part and remand for further proceedings.

## I.

The applicant filed an application for a determination of a water storage right for Trap Lake II, a proposed reservoir on the site of the presently existing Trap Lake, claiming 4700 acre feet for storage for agricultural, industrial, municipal, recreational, fisheries and other beneficial uses, and requesting a ruling "that the water may be used and reused and put to a succession of uses until totally consumed." The sources of the water were described as waters of Trap Creek, a tributary of the Cache La Poudre River, and waters of the Colorado River to be transported by the Grand Ditch across the continental divide

and stored by exchange in the Trap Lake II Reservoir.[1] The water judge referred the matter to the water referee for a ruling.

The referee filed a written ruling that a conditional water right for 4700 acre feet with an appropriation date of June 16, 1982, should be decreed to Trap Lake II for agricultural, industrial, municipal, recreational and fisheries purposes. The referee's ruling recognized a right to fill and refill the reservoir and also specified that the "[a]pplicant may reuse or make successive uses of the water, so long as they maintain dominion and control." Mark H. Curtis and Harvey W. Curtis (protestants), who had previously entered their appearance, objected to the referee's ruling on several grounds and filed a protest setting forth those objections. Among the disputed questions to be resolved by the water judge, as listed in the protestants' trial data certificate, were whether the application was speculative and whether the applicant could "claim the right to reuse, successive use, and 100% consumptive use."

The case was tried to the water judge beginning on July 12, 1984. Thereafter, the water judge modified the referee's ruling in several respects and, as modified, made that ruling the judgment and decree of the court. The modifications consisted of a reduction of the quantity of storage from 4700 acre feet to 3800 acre feet (at the request of the applicant and based on proof at trial), the elimination of the right to refill, and the deletion of the provision that "[a]pplicant may reuse or make successive uses of the water, so long as they maintain dominion and control." The applicant moved for a new trial, challenging only the deletion of the provision allowing reuse or successive uses of the stored water. The water judge denied the motion, and the applicant brought this appeal.

## II.

A summary of the evidence with respect to the applicant's proposed reuse and suc-

1. The proposed exchange would operate by allowing water from the Cache La Poudre drainage above Trap Lake II Reservoir to be stored in that reservoir out of priority. The resulting loss to the Cache La Poudre system would be made up by release of Colorado River water brought across the continental divide by the Grand Ditch and stored in the Long Draw Reservoir near the headwaters of the Cache La Poudre drainage.

cessive use of the Trap Lake II waters will provide necessary background for consideration of the matter before us.

Evidence was presented at trial that the applicant is a mutual ditch company with 600 shares of stock outstanding, 19 or 20 of which are owned by the City of Fort Collins. The great majority of the remaining shares are owned by farmers, who use the water to irrigate about 51,000 acres of land in northern Colorado. The applicant has an extensive diversion and storage system with which it collects waters diverted from the drainages of the Cache La Poudre River and the upper Colorado River pursuant to decreed water rights. The Trap Lake II Reservoir is planned to provide high mountain storage for the system, both for Colorado River waters, to be stored by exchange, and for waters tributary to the Cache La Poudre River. Testimony was presented that the ability to reuse any water decreed to Trap Lake II is important to the financial feasibility of the reservoir.

The evidence with respect to plans for reuse and successive use was that Fort Collins has a number of options in mind and wishes to work with the applicant to develop a plan for further uses of the return flow. The options include: (1) first use by the city followed by redelivery to the applicant or to other irrigation companies; (2) use in an augmentation plan for wells to be drilled by the city; and (3) use by a proposed brewery for making beer, followed by use of the effluent for agricultural purposes. The director of public works for Fort Collins testified that no decision has been made as to which of the alternatives should be employed and that it would be premature to make such a decision. The applicant has no contracts with Fort Collins or anyone else concerning the reuse or successive use of water from Trap Lake II Reservoir.

### III.

No issue is before us concerning the conditional water storage right decree insofar as it relates to the first beneficial use of water to be diverted and stored. The evidence establishes, however, that such beneficial use will not fully consume the stored water. Therefore, return flow is to be expected, and it is the right to make use of this return flow that is at issue here.

In denying the right to reuse or make successive uses of stored water, the decree makes no distinction between waters to be obtained from sources tributary to the Cache La Poudre River and those waters of the Colorado River to be stored in Trap Lake II Reservoir by exchange. Different legal principles govern the right to reuse and make successive uses of water derived from these two sources. Therefore, we shall discuss separately the further uses of return flow from waters originating in each of those sources. We begin with waters to be obtained by diversion in priority from sources tributary to the Cache La Poudre River.

### A.

The applicant recognizes that with respect to tributary waters, we have held that the owner of a water right may not reuse or make successive uses of the return flow independent of the priority system. *Pulaski Irrigating Ditch Co. v. City of Trinidad*, 70 Colo. 565, 203 P. 681 (1922); *see Comstock v. Ramsay*, 55 Colo. 244, 133 P. 1107 (1913) (return flow is not subject to further appropriation independent of the priority system on the river). The applicant contends, however, that the basis for this principle is that after others have come to rely on return flows, the original appropriator should not be able to defeat that reliance by putting the return flows to use. Therefore, the applicant urges, if the waters are reused to extinction when first diverted, no reliance can arise and no expectation is defeated by permitting the original appropriator to reuse the water after it has first been employed for the decreed beneficial uses. As a result, the argument concludes, the original appropriator should be recognized to have the right to reuse and make successive uses of waters provided only that the further use be initiated immediately after

the first beneficial use so that no expectations of others regarding return flow are permitted to arise.

The protestants argue that the right of reuse under these circumstances has never been recognized under our law. They contend that the applicant's plan is simply a form of speculation, permitting the applicant to reserve water for some undetermined future uses independent of the priority system on the river. We agree with the protestants, and therefore conclude that the water judge correctly denied the application for authorization to reuse and make successive uses of the tributary waters.

A water right is a right to *use* waters of the state by applying those waters to beneficial use. *See* § 37–92–103(3), (12), 15 C.R.S. (1973 & 1986 Supp.). Once the beneficial use upon which a water right is based has taken place, any unconsumed waters remain "[w]aters of the state," *see* § 37–92–103(13), 15 C.R.S. (1973), and are subject to "[a]ppropriation," *see* § 37–92–103(3), 15 C.R.S. (1986 Supp.).

The applicant does not base its asserted right to reuse and make successive uses of the return flow upon an appropriation of the return flow after initial use. Instead, the applicant argues that the right to reuse and make successive uses should be recognized as an incident of the conditional water right for storage in Trap Lake II Reservoir. The applicant contends that cases such as *Pulaski* and *Comstock* are based upon situations in which a return flow was permitted to occur for extended periods, and downstream appropriators came to rely upon that return flow. Although this was the factual situation present in *Pulaski* and *Comstock*, a more fundamental principle provides the foundation for those decisions. In each case, the return flow after use by the first appropriator became water tributary to natural streams and as such was subject to diversion and use under the appropriations and associated system of priorities existing on the streams. In *Pulaski*, as in the present case, the initial appropriator did not take those steps necessary to

appropriate the return flow as part of its initial beneficial use. As a result, the return flow "became a part of the supply for the appropriations below the point of discharge." *Pulaski*, 70 Colo. at 567, 203 P. at 682. The governing principle is explicit in *Pulaski:*

> It is elementary that the waters of the public streams of this state belong to the people, and that appropriators acquire only a right of use. It is also settled law that an appropriator is limited in his use of water to his actual needs. He must not waste it, and if there is a surplus remaining after use, it must be returned to the stream whence it came.

70 Colo. at 568, 203 P. at 682. We have consistently stated and reaffirmed the principle that beneficial use is the measure of a water right. *E.g., Rominiecki v. McIntyre Livestock Corp.*, 633 P.2d 1064, 1067 (1981); *Weibert v. Rothe Bros., Inc.*, 200 Colo. 310, 316, 618 P.2d 1367, 1371 (1980); *Fort Collins Milling & Elevator Co. v. Larimer & Weld Irrigation Co.*, 61 Colo. 45, 53, 156 P. 140, 143 (1916).

In the present case, then, the proper inquiry is whether the applicant has established a right in the return flow by appropriation, for that is the basis, if there is any, upon which its claim to that return flow must be founded. It is well settled that the initiation of an appropriation requires a concurrence of the intent to appropriate water for application to beneficial use and the performance of overt acts in furtherance of that intent. *E.g., City & County of Denver v. Colorado River Water Conservation District*, 696 P.2d 730, 745 (Colo.1985); *Colorado River Water Conservation District v. Vidler Tunnel Water Co.*, 197 Colo. 413, 416, 594 P.2d 566, 568 (1979); *Elk-Rifle Water Co. v. Templeton*, 173 Colo. 438, 445, 484 P.2d 1211, 1214 (1971).

The applicant here has not demonstrated the requisite intent to appropriate. "Intent to appropriate requires a fixed purpose to pursue diligently a certain course of action to take and beneficially use water from a particular source." *City & County of*

*Denver v. Colorado River Water Conservation District,* 696 P.2d at 745. *Accord, e.g., Fruitland Irrigation Co. v. Kruemling,* 62 Colo. 160, 165–67, 162 P. 161, 163 (1916). The applicant has not decided upon even the broadest outline of a plan for reuse or successive use of the water. The applicant's evidence was simply that it is too early to decide how the waters will be reused or successively used or even who will make such reuse or successive use. Although the applicant has many ideas, each differing markedly from the others, as to the best way to reuse or make successive uses of the water, it has no fixed purpose to pursue any particular one of them. Such a general and unfocused desire to use the return flow for undetermined uses is not the fixed purpose to apply water to beneficial use that has long been required as an essential element of an appropriation. *See, e.g., City & County of Denver v. Colorado River Water Conservation District,* 696 P.2d at 745–46; *Fruitland Irrigation Co.,* 62 Colo. at 165–67, 162 P. at 163. Additionally, to the extent that the prospective user may be some person or entity with whom the applicant has no contract or agency relationship, we have held that the applicant's hope to make the water available to such a user at some time in the future is insufficient to establish the intent necessary to effect an appropriation. *Colorado River Water Conservation District v. Vidler Tunnel Water Co.,* 197 Colo. 413, 594 P.2d 566 (1979). *Accord City & County of Denver v. Colorado River Water Conservation District,* 696 P.2d at 756–58; *Fort Lyon Canal Co. v. Amity Mutual Irrigation Co.,* 688 P.2d 1110, 1113–15 (Colo.1984); *Lionelle v. Southeastern Colorado Water Conservancy District,* 676 P.2d 1162, 1168–70 (Colo.1984); *Rocky Mountain Power Co. v. Colorado River Water Conservation District,* 646 P.2d 383, 387–90 (Colo.1982). *See* § 37–92–103(3), 15 C.R.S. (1986 Supp.). In *Vidler,* we stated, "As we read our constitution and statutes, they give no one the right to preempt the development potential of water for the anticipated future use of *others* not in privity of contract, or in any

agency relationship, with the developer regarding that use." 197 Colo. at 417, 594 P.2d at 568 (emphasis in original). Our conclusion that the necessary element of intent to appropriate is absent in this case makes it unnecessary to consider whether the applicant performed the overt acts necessary to initiate an appropriation.

The applicant argues, however, that the water at issue in this case will be diverted in priority when no senior rights are in need of water. In the absence of such diversion, the water will leave the State of Colorado and benefit no one within Colorado's borders. Therefore, the applicant asserts, the recognition of the right of reuse and successive use as an incident of an initial conditional storage right decree would serve the purpose of maximizing the beneficial use of waters of the state. This argument ignores the essential fact that appropriation is the basis of all rights to use of waters of the state. *See* Colo. Const. art. XVI, § 5; *Southeastern Colorado Water Conservancy District v. Shelton Farms, Inc.,* 187 Colo. 181, 188–90, 529 P.2d 1321, 1325–26 (1975). Our system of appropriation serves the purpose of maximizing the beneficial use of Colorado's waters by preventing anyone from preempting the development potential of water absent a demonstrated intent to put that water to beneficial use. *See Vidler,* 197 Colo. at 416–17, 594 P.2d at 568–69. Recognition of a right to reuse and make successive uses, absent a demonstrated intent to put the return flow to beneficial use, would undermine the policy of maximizing the beneficial use of the state's waters. The holder of such a right could retain the return flow indefinitely, and anyone with a demonstrated intent to put that return flow to beneficial use would be powerless to do so.

Although the return flow in this case is subject to appropriation by the applicant within the system of priorities for the Cache La Poudre drainage, the applicant has not satisfied the requirements to effect such an appropriation. To hold that the right to reuse or make successive uses of

stored water can be recognized as an incident of a water storage right without satisfying the requirements for initiation of an appropriation would be contrary to the law and policy of this state as it has been set forth in our constitution, statutes, and cases. *Cf. R.J.A., Inc. v. Water Users Ass'n*, 690 P.2d 823 (Colo.1984) (reduction of consumptive use of tributary water cannot provide basis for water right independent of system of priorities in streams); *Giffen v. State, City & County of Denver*, 690 P.2d 1244 (Colo.1984) (same); *Southeastern Colorado Water Conservancy District v. Shelton Farms, Inc.*, 187 Colo. 181, 529 P.2d 1321 (1975) (same).

In summary, any return flow from the application to beneficial use of the waters tributary to the Cache La Poudre River to be stored in Trap Lake II Reservoir under the applicant's conditional water storage right is "waters of the state" and is subject to diversion and use to supply existing and future appropriations on the stream. The applicant has not met the requirements for appropriation of that water and therefore has no present right to use the return flow. The water judge, therefore, correctly declined to recognize any right in the applicant to reuse and make successive uses of waters to be stored in the Trap Lake II Reservoir pursuant to the applicant's decreed conditional water storage right, insofar as those waters are derived from sources tributary to the Cache La Poudre River.

### B.

■ We turn now to the question of the applicant's right to reuse and make successive uses of waters to be imported to the Cache La Poudre River drainage from the Colorado River drainage for storage by exchange in Trap Lake II Reservoir. This right is established by both statute and case law. Section 37–82–106(1), 15 C.R.S. (1986 Supp.), provides:

> Whenever an appropriator has lawfully introduced foreign water into a stream system from an unconnected stream system, such appropriator may make a succession of uses of such water by exchange or otherwise to the extent that its volume can be distinguished from the volume of the streams into which it is introduced. Nothing in this section shall be construed to impair or diminish any water right which has become vested.

In *City & County of Denver v. Fulton Irrigating Ditch Co.*, 179 Colo. 47, 506 P.2d 144 (1972), we noted this statute and also held that "[e]ven without the statute" Denver had the right to reuse and make successive uses [2] of water imported to the eastern slope by transmountain diversions from the Colorado River basin. *Id.* at 52, 506 P.2d at 144. *See also Town of Estes Park v. Northern Colorado Water Conservancy District*, 677 P.2d 320, 325–26 (Colo.1984). In arriving at this result, we considered it important that the Colorado River water would never have come into the South Platte River system except for the developer's efforts. *Fulton Irrigating Ditch Co.*, 179 Colo. at 53, 506 P.2d at 147. The water judge in the present case erred, therefore, in deleting from the referee's ruling the right to reuse and successively use waters to be stored in Trap Lake II Reservoir pursuant to the decreed conditional water right to the extent that such waters have their origin in the Colorado River basin.[3]

---

**2.** In *City & County of Denver v. Fulton Irrigating Ditch Co.*, we defined "reuse," for the purposes of that opinion, to mean "a subsequent use of imported water for the same purpose as the original use" and defined "successive use" to mean "subsequent use by the water importer for a different purpose." 179 Colo. at 52, 506 P.2d at 146–47. That case also involved the right of disposition of imported water, a right not at issue in the case now before us.

**3.** This case does not involve a conflict between the right of an importer of water to reuse or make successive uses of that water in a situation where the imported water remaining after initial use has been allowed to flow to the stream and where other users have relied on that return flow and made it the subject of purported appropriations. *See City & County of Denver v. Fulton Irrigating Ditch Co.*, 179 Colo. at 58–59, 506 P.2d at 150. We express no opinion on the relative rights of parties in such circumstances.

We next consider whether the decree can be corrected in this appeal without the necessity for remand.

### C.

■ The water judge modified the referee's ruling by striking the following sentence before making that ruling the judgment and decree of the court: "Applicant may reuse or make successive uses of the water, so long as they maintain dominion and control." The applicant asserts that the comments by the water judge during the course of the hearing make clear that the court's intention was to deny the right to reuse and to make successive uses only with respect to waters tributary to the Cache La Poudre River and not to waters imported from the Colorado River drainage. The applicant argues that failure to recognize the right to reuse and make successive uses of Colorado River waters was simply an inadvertent error and should be remedied by this court without the necessity for a remand. We believe, however, that this matter should be addressed first by the trial court and that a remand is necessary.[4]

The record supports the applicant's contention that the trial court properly concluded that the applicant should have the right to reuse and make successive uses of waters imported from the Colorado River basin and stored by exchange in Trap Lake II Reservoir. The omission of a provision recognizing this right, and the intended utilization of the reservoir to store waters tributary to the Cache La Poudre River as well as those imported from the Colorado River drainage, leaves it uncertain whether the water judge would have considered any special provisions necessary to facilitate proper administration of the conditional decree had it not overlooked the matter of the right to reuse and make successive uses of Colorado River water stored by exchange in Trap Lake II Reservoir. The statutory right to reuse and make successive uses of water imported from an unconnected stream system is qualified by the words "to the extent that its volume can be distinguished from the volume of the streams into which it is introduced." § 37–82–106(1), 15 C.R.S. (1986 Supp.). The court could have thought it necessary or appropriate to include provisions to assure accurate differentiation of the waters attributable to the two different sources, by metering or otherwise, as a condition to the right of reuse or successive use of the foreign water. Additional evidence may be necessary to determine the need for and content of such a condition. Under these circumstances we consider it necessary to remand this case to the water court for possible further proceedings and revision of its decree in a manner consistent with this opinion.[5]

ROVIRA, J., not participating.

---

*See generally* Fischer, *Re-Use of Foreign Waters,* 7 The Colorado Lawyer 522 (1978).

4. The protestants assert that the deletion of the right to reuse and make successive uses of Colorado River water was not raised in the motion for new trial and therefore is not properly before us on appeal. The motion for new trial excepts generally to the deletion of the reuse provision as to "waters to be captured pursuant to said decree." Although this does not isolate and distinguish the special situation of the Colorado River waters, we consider it adequate to preserve the issue for appeal.

5. Provision is made by statute for correction of clerical mistakes in a judgment and decree. *See* § 37–92–304(10), 15 C.R.S. (1973); *Telluride Co. v. Division Engineer,* 195 Colo. 143, 575 P.2d 1297 (1978). We express no opinion concerning whether the deletion of the provision for the right to reuse and make successive uses of Colorado River waters can be classified as a clerical mistake.